# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

HAZEL PERKINS,

      Plaintiff,

v.                                                            No. CIV 99-1506 BB/WWD

MICHAEL "CHUNKY" CLICK, HARVEY
RODRIGUEZ, SHERRY ELLIS, BLAINE
RENNIE, and KELLY LOWE,

      Defendants.

## **OPINION**

THIS MATTER comes before the Court for consideration of a motion for summary judgment filed by Defendants Click and Ellis (Doc. 44). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the summary-judgment motion will be denied.

This is a civil rights lawsuit arising out of an incident in which Plaintiff came upon her slain husband[1], was placed in a squad car for an undetermined period of time at the scene of the killing, and then taken to the county sheriff's offices. She remained there for six and one-half hours, until an investigator employed by the sheriff's department interviewed her at approximately six in the morning. Subsequently, Plaintiff filed this lawsuit, alleging she was detained in the squad car and at the sheriff's office involuntarily in violation of her constitutional right to be free from unreasonable seizure. Plaintiff has voluntarily dismissed two Defendants, and accepted an offer of settlement from another. At this point, therefore, the only Defendants remaining in the case are Mr. Click, who was

---

[1] There is no dispute Plaintiff's husband was killed by a third party and Plaintiff was never a suspect.

the county sheriff at the time of the incident, and Ms. Ellis, who was an employee of the sheriff's department. Defendants have moved for summary judgment, arguing that no constitutional violation occurred. Alternatively, Defendants maintain they are entitled to qualified immunity because there was no clearly established law indicating their actions violated Plaintiff's constitutional rights.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motion in light of these standards.

**Facts**

The facts presented to this Court, viewed most favorably toward Plaintiff, are as follows. Plaintiff lived in the town of Loving, approximately 15 miles from Carlsbad, New Mexico. Plaintiff's son, Brian, was involved in a romantic relationship with a young woman named Lisa Mendoza. Lisa's sister, Edie Morrison, did not approve of the relationship between Brian and Lisa. Edie lived across the river from Plaintiff, a short drive away. On the day of the incident, Edie and her husband were at Plaintiff's residence when Lisa and Brian drove up. An argument ensued, Lisa's pickup truck

was bumped, and Lisa drove off after Edie and her husband. Plaintiff telephoned Edie's house to make sure Lisa was all right, and Edie answered. Plaintiff could hear screaming and other loud noises in the background, and Edie told Plaintiff that she and her husband were going to teach Lisa a lesson. Concerned for Lisa's safety, Plaintiff called the police, who came to investigate. Edie subsequently telephoned Plaintiff and spoke to Brian, saying she and her husband were going to kill the person who called the police. Plaintiff was afraid of Edie and her husband because they were "biker" types. Plaintiff therefore telephoned her husband, Jack, to ask him what she should do. Jack said he would talk to Edie and her husband, tell them he had called the police, and fix the problem.

     A short while later, Jack came home and went over to Edie's house. Plaintiff then received a telephone call from a friend, who said two men were fighting in the street. Plaintiff jumped in her vehicle and drove across the bridge to Edie's house. When she arrived there, Jack was lying in the street, bleeding. Edie had shot Jack in the neck with a crossbow. Plaintiff ran to her husband and held him. A police officer arrived, and at some point Plaintiff was placed in the back of a squad car and told she would have to give a statement. The squad car was locked, and Plaintiff could not get out. She was concerned about the welfare of the children she had left at home, and wanted to hold Jack, so she knocked on the window of the squad car whenever a law enforcement officer walked by, and asked to be let out so she could check on her children. The officers present included city police officers and sheriff's deputies, as well as the sheriff himself, Defendant Click. At one point, an officer wearing a light uniform, who Plaintiff thought was a sheriff's deputy, told her to quit knocking on the window or he would make her quit by putting some sort of "hold" on her.

     Plaintiff lay down on the back seat of the squad car. Periodically, one officer or another would open the door, shake her foot, and ask if she was ready to give a statement. Defendant Click did this at least once. Finally, the officer who had placed her in the squad car, who was a city police

3

officer, got in and drove Plaintiff approximately 15 miles into Carlsbad, to the offices of the county sheriff, Defendant Click. Plaintiff was told she would have to remain at the offices until she was interviewed by an investigator. Plaintiff claims this action was taken pursuant to a policy enforced by Defendant Click, under which witnesses to major crimes are routinely held and then transported to the sheriff's office to give a statement.

Defendant Click's deposition testimony confirmed the existence of such a policy. He testified that he had instructed his subordinates that, "depending on the severity of the crime", they may hold a witness and transport the witness to the Eddy County Sheriff's Office. With respect to a homicide scene, Defendant Click testified, "Generally everybody that is on that scene will be transported to the Eddy County Sheriff's Department to be interviewed." Defendant Click qualified this testimony when asked what would happen if the witness did not want to go, by saying it depended on their involvement and the circumstances. However, he also stated that he told his officers which circumstances will justify them in transporting a witness into Carlsbad for statements, against their will: "Major crime scenes, homicides, rapes." Finally, he was asked if he had ever told his officers that a potential witness to a homicide can be transported into Carlsbad and held at the sheriff's office for interviews, even if that witness did not want to go. He replied, "I'm sure I have." In sum, Defendant Click's testimony raises at least a question of fact as to whether he implemented and enforced a blanket policy, under which all witnesses to a major crime should be held against their will, and transported to the sheriff's offices in Carlsbad, until they could be interviewed.

At the sheriff's offices, Plaintiff was escorted into an office. Defendant Ellis either escorted her to the office or was in the office already, and remained there at all times while Plaintiff was present. Although it was late at night, Defendant Ellis had been called into the office specifically for the purpose of remaining with Plaintiff. Plaintiff told Ellis she needed to telephone her brother to

4

inform him what had happened. Instead of giving Plaintiff the phone, Ellis dialed the number and talked to the brother herself. The same thing happened when Plaintiff told Ellis she needed to call someone to care for her children; Ellis dialed the number and spoke to the woman herself. At one point during the night, Plaintiff needed to use the restroom; Ellis accompanied her, and Plaintiff "had to leave the stall door open." Ellis also told Plaintiff she could not wash her husband's blood off. At another time, Plaintiff wanted to go outside to smoke a cigarette, and Ellis accompanied her outside as well. Ellis did testify that if Plaintiff had walked off while she was outside, Ellis would not have tried to stop her. However, several times during the night Plaintiff asked Ellis when she could go home, and Ellis told her she could leave after she was interviewed. Finally, at approximately 6 a.m. the next morning, Plaintiff was interviewed and was released from the sheriff's offices. As noted above, she had been there for six and one-half hours.

**Discussion**

**A. Whether a Seizure Occurred in This Case:** While acknowledging the above facts, at least for summary-judgment purposes, Defendants nonetheless argue that, even accepting Plaintiff's facts as true, no seizure occurred in this case. Defendants characterize the events as a request by officers that Plaintiff give a statement, implying that her stay in the back of the squad car and her trip to the sheriff's office, as well as remaining there for six and one-half hours, was entirely voluntary. Defendants state that Plaintiff was free to leave the sheriff's office at any time. Defendants ignore the evidence that Plaintiff repeatedly asked to be released from the squad car to check on her children, was told she had to give a statement, was driven 15 miles from her home into Carlsbad and had no transportation to return even if she had walked out of the office, was followed into the bathroom and when she went outside to smoke, and was repeatedly told she could go home only after she was interviewed. Furthermore, Defendants ignore Click's testimony concerning his policy of having all

witnesses to a major crime held and transported into Carlsbad to the sheriff's office, to facilitate the investigation of the crime. The circumstances of this case are clearly consistent with such a policy. There is, then, at least a question of fact as to whether Plaintiff was held in the squad car, transported into Carlsbad, and kept involuntarily at the sheriff's offices, all pursuant to that policy.[2]

Under the facts presented by Plaintiff, therefore, there is evidence that she was involuntarily held in a squad car at the scene of the homicide, and then involuntarily transported into Carlsbad and held at the sheriff's offices for six and one-half hours. Assuming Plaintiff can prove these facts, the Court has no trouble concluding that Plaintiff was subjected to a *de facto* arrest. At the scene of the homicide, Plaintiff was not interviewed or even asked any questions, as would normally happen if she were merely being detained as a possible witness to a crime. Instead, she was placed in the back of a locked patrol car and not released, despite her numerous requests. Furthermore, the detention did not stop at the scene; Plaintiff was transported 15 miles and held for six and one-half hours. This act of transportation, standing alone, gives rise to an inference that a *de facto* arrest occurred. *See United States v. Arango*, 912 F.2d 441, 447 (10th Cir. 1990) (once the police told the defendant to come with them to the sheriff's office, the line between detention and *de facto* arrest was crossed); *Orozco v. County of Yolo*, 814 F.Supp. 885, 892-93 (E.D.Cal. 1993) (detention of witnesses to homicide escalated into arrest when witnesses were forcibly moved from place of detention to sheriff's station).

---

[2]Defendant emphasize that Plaintiff was held in a city police squad car, not a sheriff's department squad car, and was driven into Carlsbad by a city police officer. However, Plaintiff was not taken to the city police headquarters; she was taken to the sheriff's offices and remained there. Furthermore, Defendant Click was at the scene of the homicide, and he is the architect of the policy of transporting witnesses, voluntarily or involuntarily, to the Eddy County Sheriff's Department. There is at least a question of fact, therefore, as to whether the city police officer was acting at Click's behest or pursuant to his policy when he held Plaintiff at the scene and then transported her to the sheriff's department.

**B. Validity of Arrest:** Without citing any specific authority concerning arrest of a witness, Defendants argue generally that even if a detention occurred, it was justified under the circumstances of this case, and therefore not an unreasonable seizure under the Fourth Amendment. It is black-letter law that, as to persons suspected of a crime, an arrest is a "seizure" for Fourth-Amendment purposes. *See United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999). Furthermore, an arrest is "reasonable" where there is probable cause to believe that an offense has been or is being committed. *Id.* A similar "reasonableness" standard must be applied to the arrest of a witness to a crime; otherwise, innocent witnesses will be granted fewer rights than the suspect who allegedly committed the crime they have witnessed. In other words, a blanket power to arrest any witness to a major crime, and hold them until they are interviewed at police convenience, cannot be constitutionally sustained. Instead, the source of such power to arrest a witness, if any, must be determined, and the actions of Defendants in this case measured against the standards established by that source.

Absent assistance from the parties on the issue, the Court has independently researched the question of the legality of arresting material witnesses to a crime. In the federal realm, there is a statute authorizing a judge to order the arrest of a material witness upon a showing, by affidavit, of two things: the testimony of the person is material in a criminal proceeding, *and* it may become impracticable to secure the presence of the person by subpoena. 18 U.S.C.A. § 3144 (2000). This statute, obviously, requires an affidavit, an act by a judge, and a showing that the witness may not be amenable to service of a subpoena, none of which occurred in the present case. A prior version of this statute, which did not authorize a judge to order an arrest but did authorize the judge to impose conditions of release, has been interpreted to impliedly confer the power to arrest a material witness to a crime. *See Bacon v. United States*, 449 F.2d 933, 937-39 (9th Cir. 1971). Significantly,

however, such an arrest must be supported by probable cause[3]; the judicial officer issuing an arrest warrant for a material witness must have probable cause to believe that the testimony of the person is material[4]; and the judicial officer must have probable cause to believe that it may become impracticable to secure the person's presence by subpoena.[5]  The reasoning behind this requirement is that the arrest and detention of a potential witness is just as much an invasion of the person's security as if she had been arrested on a criminal charge.  *Bacon,* 449 U.S. at 942; *see also In re Class Action Application for Habeas Corpus*, 612 F.Supp. 940, 945 (W.D.Tex. 1985).

New Mexico also has a material-witness statute that is similar, but not identical, to the federal statute construed in *Bacon*.  According to the New Mexico provision, "[i]f it appears by affidavit that the testimony of a person is material in any felony criminal proceeding and that it may become impracticable to secure his presence by subpoena, the judge may require such person to give bail pursuant to the Rule of Criminal Procedure for his appearance as a witness..."  NMSA § 31-3-7.  On its face, this provision does not authorize an arrest at the scene of a crime, and requires an affidavit supporting any action that is taken with respect to a material witness.  However, a similar Tennessee statute was construed as inherently contemplating the immediate arrest and detention of material witnesses, when the arrests are supported by probable cause.  *See White by Swafford v. Gerbitz*, 892 F.2d 457, 460 (6th Cir. 1989).  The probable cause required by *White* was a showing that the statutory requirements had been met – that is, that the individual was a material witness to a crime, and it was reasonably likely that he would not appear at the suspect's trial.  *Id.*, 892 F.2d at 461.

---

[3]*Arnsberg v. United States*, 757 F.2d 971, 976 (9th Cir. 1985); *see also State v. Brady*, 388 N.W.2d 151, 153 (Wisc. 1986); *State v. Misik*, 569 A.2d 894, 899 (N.J.Super. 1989).

[4]*Bacon*, 449 F.2d at 943; *United States v. Oliver*, 683 F.2d 224, 231 (7th Cir. 1982).

[5]*Bacon, supra*; *United States v. Feingold*, 416 F.Supp. 627, 629 (E.D.N.Y. 1976).

In this case, Plaintiff's testimony was clearly material to the homicide investigation. The other requirements of Section 31-3-7, however, were not met. Even assuming the arresting authority could dispense with the statutory requirements of an affidavit and action by a judge, there were no facts indicating any possibility that Plaintiff would avoid a subpoena or would be unwilling to testify against Edie. Plaintiff lived in the Carlsbad area, had children and a business to care for, and made no indication to any officer that she would be a reluctant witness. Therefore, her arrest did not comport with the requirements of Section 31-3-7, even if that provision is liberally construed, and was not a "reasonable" seizure under the Fourth Amendment.[6]

**C. Qualified Immunity:** Defendants argue that, even if they violated Plaintiff's constitutional rights, they are entitled to qualified immunity. Defendants are entitled to qualified immunity if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other courts must have found the law to be as the plaintiff maintains. *Dill v. City of Edmond*, 155 F.3d 1193, 1205 (10th Cir. 1998). In *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999), the Tenth Circuit stated that a plaintiff "need not present an identical case to show the law was clearly established" but must show

---

[6]The Court has considered the possibility that a common-law right to arrest material witnesses might exist. In *Bacon*, the Ninth Circuit noted that most jurisdictions considering the issue have rejected the existence of such a right. 449 F.2d at 939; *see* Stacey M. Studnicki, *Material Witness Detention: Justice Served or Denied?*, 40 Wayne L.Rev. 1533, 1534-34 (1994) (discussing evolution of the right to compulsory attendance at common law). If such a right does exist, however, the Court is certain that it would be subject to the same requirements as the statutory right to arrest a material witness--there must be some showing that the witness will not cooperate with law enforcement efforts to obtain her testimony.

9

only that the contours of the right were sufficiently clear that a reasonable official would understand he was violating that right. 173 F.3d at 1241.

The right at issue in this case is the right of a citizen to be free from warrantless arrest, unless there is probable cause the citizen is violating a statutory requirement serious enough to allow such an arrest. As the cases cited in the previous section confirm, that right was clearly established at the time Plaintiff was arrested. Furthermore, the right was clearly established by the statutory provision that was the only possible source of Defendants' authority to arrest Plaintiff, Section 31-3-7. The absence of any Tenth Circuit or Supreme Court authority directly on point, specific to a material witness arrest, does not mean the law was not clearly established, since the requirement of probable cause for any arrest has long been clearly established. *See Sutton*.

With respect to Defendant Click, the Court holds that any reasonable sheriff would have recognized that the arrest of a potential witness, simply because she is a potential witness, violates the most basic rights provided by the Fourth Amendment. If a suspect in a crime may not be arrested in the absence of probable cause to believe the suspect has committed the crime, a mere witness to the crime may surely not be arrested absent a showing that the witness plans to shirk her statutory duty to provide testimony. *See Stone v. Holzberger*, 807 F.Supp. 1325, 1338 (S.D.Ohio 1992) (no reasonable law enforcement officer could believe that a criminal arrestee is entitled to higher constitutional protections than a material witness arrestee who has committed no crime). As discussed above, there is evidence that Plaintiff was arrested pursuant to Defendant Click's policy, that Click was at the scene when Plaintiff was first detained, and that Plaintiff was detained for six and one-half hours pursuant to Click's policy concerning detention of material witnesses. He is therefore subject to possible supervisory liability in this case, and is not entitled to qualified immunity. *See Orozco*, 814 F.Supp. at 895-96 (denying defendants' request for qualified immunity in case with

facts similar to facts in this case); *see also Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000) (to establish supervisory liability in a § 1983 case, a plaintiff must show an affirmative link between the constitutional deprivation and either the supervisor's personal participation, the supervisor's exercise of control or direction, or the supervisor's failure to train his subordinates properly).

The qualified-immunity question with respect to Defendant Ellis is a closer call. Defendants maintain that all she did was keep Plaintiff company while Plaintiff was waiting to give a statement, and there is certainly evidence to support that contention. However, as discussed above, at this stage the evidence must be viewed in the light most favorable to Plaintiff, not Ellis. The evidence set forth above would allow a reasonable factfinder to determine that Ellis was acting as a guard, not a companion. She refused to hand Plaintiff the telephone so Plaintiff could make her own phone calls; she accompanied Plaintiff to the bathroom; she accompanied Plaintiff outdoors when Plaintiff went to smoke; and she informed Plaintiff, several times, that Plaintiff could not go home until she had been interviewed. In short, there was evidence that Ellis was there not only to keep Plaintiff company, but to keep her there until her statement had been obtained. A reasonable employee of the sheriff's department should have realized that this conduct amounted to a continuation of the *de facto* arrest that had occurred when Plaintiff was transported to the sheriff's office. A reasonable employee should also have realized that a potential witness has at least the same rights as a suspect, and in the absence of probable cause must be set free. The fact that Ellis may have simply been acting in accordance with the directives of her supervisor, Defendant Click, does not absolve her of liability. Therefore, at this point, the Court must deny Ellis's request for qualified immunity as well.

**Conclusion**

Plaintiff has presented evidence that she was subjected to a *de facto* arrest, without any probable cause justifying such an arrest. Furthermore, the law was clearly established that such an

arrest of a material witness was illegal, in the absence of probable cause.  Therefore, Defendants' motion for summary judgment will be denied.

## ORDER

Pursuant to the foregoing opinion, Defendants' motion for summary judgment (Doc. 44) is hereby DENIED.

Dated this 13th day of June, 2001.

                                                BRUCE D. BLACK
                                                United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Daymon B. Ely
1228 Central S.W.
Albuquerque, New Mexico 87102

James R. Scarantino
714 Montclaire N.E.
Albuquerque, New Mexico 87110

**For Defendants**:
James P. Sullivan
Hatcher, Sullivan & Grand, P.A.
128 East DeVargas
Santa Fe, New Mexico 87501